UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

LLOYD CAESAR,

                                        Plaintiff,

                    -against-

CITY OF NEW YORK; Police Officer DENNIS DIAZ,
Shield No. 1270; Police Office CHRISTIAN PEREZ,
Shield No. 14888; Lieutenant ALAN C. MYRTHIL,
Shield No. 3851; Police Officer ALIX BLOT,
Shield No. 19157; Det. AHMED A. ALMELAIKI,
Shield No. 5667; Lieutenant THOMAS G. TURNER,
Shield No. 2747; Police Officer MATTHEW BOTTCHER,
Shield No. 21926; Police Officer DOMINEEK J.
WASHINGTON, Shield No. 28848; Detective
PETER MORALES, Shield No. 1467; and JOHN
and JANE DOE 1 through 20, individually and in their
official capacities (the names John and Jane Doe being
fictitious, as the true names are presently unknown),

                                        Defendants.
------------------------------------------------------------x

**SECOND AMENDED
COMPLAINT**

1:24-cv-06433-BMC

Jury Trial Demanded

## NATURE OF THE ACTION

1.       This is an action to recover money damages arising out of the violation of plaintiff's

rights under the Constitution. Lloyd Caesar, for the past several years, has been harassed by members

of NYPD's "Street Unit", formerly known as the Anti-Crime Unit and other officers in the confines

of the 73rd Precinct. Since 2020, Mr. Caesar has been falsely arrested 8 times in close proximity to his

home in the confines of the 73rd Precinct with 7 of those times happening in the last year or two.[1] The

current action deals with unlawful arrests and prosecutions that October 6, 2022, June 15, 2023,

December 27, 2023, December 28, 2023, March 6, 2024, and April 13, 2024. Each time, Mr. Caesar

was lawfully in his neighborhood, yet was unlawfully searched, falsely arrested, wrongfully imprisoned

---

[1] Two of the eight cases have been settled. Mr. Caesar has also settled a third against the City connected to the 69th Precinct, with another suit from the 69th pending.

(and at least once unlawfully interrogated), and, ultimately, maliciously prosecuted. In the case at bar, there is evidence that these officers knew who Mr. Caesar was, targeted him, and sought to harass and falsely accuse Mr. Caesar. This is a pattern and reeks of retaliation.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5.      This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6.      Plaintiff demands a trial by jury in this action.

## PARTIES

7.      Plaintiff Lloyd Caesar ("plaintiff" or "Mr. Caesar") is a resident of Kings County in the City and State of New York.

8.      Defendant City of New York is a municipal corporation organized under the laws of the State of New York.  It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

9.      Defendant Police Officer Dennis Diaz, Shield No. 1270 ("Diaz"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Diaz is sued in his individual and official capacities.

10.     Defendant Police Officer Christian Perez, Shield No. 14888 ("Perez"), at all times

-2-

relevant herein, was an officer, employee and agent of the NYPD. Defendant Perez is sued in his individual and official capacities.

11.     Defendant Lieutenant Alan C. Myrthil, Shield No. 3851 ("Mythil"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Myrthil is sued in his individual and official capacities.

12.     Defendant Police Officer Alix Blot, Shield No. 19157 ("Blot"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Blot is sued in his individual and official capacities.

13.     Defendant Det. Ahmed A. Almelaiki, Shield No. 5667 ("Almelaiki"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Blot is sued in his individual and official capacities.

14.     Defendant Lt. Thomas G. Turner, Shield No. 2747 ("Turner"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Turner is sued in his individual and official capacities.

15.     Defendant PO Matthew Bottcher, Shield No. 21926 ("Bottcher"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Bottcher is sued in his individual and official capacities.

16.     Defendant PO Domineek J. Washington, Shield No. 28848 ("Washington"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Washington is sued in his individual and official capacities.

17.     Defendant Det. Peter Morales, Shield No. 1467 ("Morales"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Morales is sued in his individual and official capacities.

18.    At all times relevant defendants John and Jane Doe 1 through 20 were police officers, detectives or supervisors employed by the NYPD.  Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 20.

19.    At all times relevant herein, defendants John and Jane Doe 1 through 20 were acting as agents, servants and employees of the City of New York and the NYPD.  Defendants John and Jane Doe 1 through 20 are sued in their individual and official capacities.

20.    At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

21.    In the case at bar, each of the defendants are either a part of the "Street Unit" or work in the 73rd Precinct.

22.    Here, upon information and belief, the named and unnamed defendants, because they work within the confines of the 73rd Precinct, share information.

23.    Upon information and belief, that information included information about Lloyd Caesar.

24.    This information led to Mr. Caesar being targeted and his rights being violated, including but not limited to:

- Being subjected to unlawful stop and frisks;

- During said stop and frisks, the named and unnamed defendants escalating the stop and physical contact with Mr. Caesar, resulting in further unlawful intrusions to his rights and sometimes being assaulted by the named and unnamed defendants;

- Being unlawfully searched;

- Having his property destroyed;

- Being unlawfully interrogated;

- Being accused of crimes that he was not even arrested for in an attempt to "clear the books" by accusing Mr. Caesar of crimes that the named and unnamed defendants knew that he did not commit;

- Having his family harassed and assaulted; and

- Not being released from custody even though he was eligible for a desk appearance ticket.

25.     Moreover, there has been substantial evidence through the years that the "Street Unit" formerly known as the "Anti-Crime Unit" targeted black men in New York City, and specifically within the confines of the 73rd Precinct. *See* https://www.nytimes.com/2022/01/05/nyregion/eric-adams-nypd-anti-crime-unit.html; chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www2.nycbar.org/pdf/report/uploads/2007 2495-StopFriskReport.pdf, page 16.

26.     In the last 2 years alone, law enforcement working in the confines of the 73rd Precinct have targeted Mr. Caesar leading to 6 arrests that have been dismissed.

**<u>October 6, 2022 Arrest for DUI</u>**

27.     On October 6, 2022 at approximately 7:29PM, Mr. Caesar was arrested on the northeast corner of Hegeman Street and Osborne Street in the Brownsville section of Brooklyn. *See* Exhibit A – Criminal Complaint. Upon information and belief, Defendants Blot and Turner, among other members of the 73rd Precinct's "Street Unit" were involved in Mr. Caesar's arrest.

28.     Initially, Mr. Caesar was informed by the involved defendants that he was involved with an assault.

29.     In truth, Mr. Caesar was involved with a car accident a short distance away from where

he was arrested. However, in the criminal complaint, Defendant Blot fabricated a claim by the other individual involved with the accident, stating that Mr. Caesar was driving recklessly and harassing her. *See* Exhibit A. Notably, this individual, Kevonnah Jenkins, never provided a statement or a sworn deposition to support Defendant Blot's sworn criminal complaint.

30.     After the car accident, members of the NYPD failed to arrive at the scene for a significant amount of time; a time so long that Mr. Caesar left his car at the scene to go to his home, which was only a few blocks away, and Ms. Jenkins was allegedly taken to the hospital. All of this happened <u>prior</u> to the arrival of the NYPD.

31.     Upon information and belief, as Mr. Caesar was returning to the scene from his home, he was arrested.

32.     He was taken to the 73rd Precinct. When he was at the precinct, he was aggressively slammed against the gate while he was being processed, injuring his wrist.

33.     At his arraignment, he was advised that he was charged with the following: VTL 1192(1): OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL OR DRUGS; PL 120.20: RECKLESS ENDANGERMENT IN THE SECOND DEGREE(DQO); VTL 1192(2): OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL OR DRUGS; VTL 1192(3): OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL OR DRUGS; VTL 600(2)(A): LEAVING THE SCENE OF AN INCIDENT WITHOUT REPORTING; VTL 1212: RECKLESS DRIVING; VTL 511 (1)(A): AGGRAVATED UNLICENSED OPERATION OF A MOTOR VEHICLE IN THE THIRD DEGREE; PL 240.26(2): HARASSMENT IN THE SECOND DEGREE; VTL 509(1): UNLICENSED OPERATOR.

34.     Between the precinct and his arraignment, he was incarcerated for over 24 hours before he was released on his own recognizance. Notably, the offenses that he was charged with were

not bail eligible.

35.    On July 25, 2023, the case against Mr. Caesar was dismissed based upon a combination of insufficient evidence and untimely prosecution. *See* Exhibit B – Certificate of disposition.

36.    Within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon defendants at the Comptroller's Office. *See* Exhibit C – Notice of Claim dated August 1, 2023.

37.    At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

38.    This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

39.    Mr. Caesar suffered damage as a result of defendants' actions.  Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, an unlawful search and damage to his reputation.

### June 15, 2023 Arrest for Obstruction

40.    On June 15, 2023, at approximately 11:30PM, members, including but not limited to Defendants Diaz, Perez and Myrthil, of the NYPD's 67th Precinct's "Street Unit" conducted a stop and frisk of Mr. Caesar without any reasonable suspicion. *See* Exhibit D – sealed arrested report dated June 15, 2023. Mr. Caesar was at the corner of New Lots Avenue and Watkins Street in Brownsville, Brooklyn, not far from his home in the confines of the 73rd Precinct. Upon information and belief, Mr. Caesar was exiting a bodega when he was accosted by the defendants.

41.    Plainly, the defendants violated his 4th Amendment right to remain free from search and seizure without probable cause.

42.    Mr. Caesar did not commit any crimes and did not possess any contraband.

43.     After the defendants conducted the stop and frisk, they then unlawfully arrested Mr. Caesar and took him to the 73rd Precinct. He was arrested for a trumped-up charge of obstruction of governmental administration and several motor vehicle violations, including a parking violation.[2]

44.     At some point in the 73rd Precinct, the defendants assaulted Mr. Caesar resulting in his admission to Kings County Hospital during the early morning hours of June 16, 2024.

45.     Upon information and belief, the Kings County District Attorney's Office declined to prosecute Mr. Caesar either later in the day on the 16th or during the early morning hours of the 17th of June 2023.

46.     The defendants also destroyed his car after they unlawfully searched it.

47.     Within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon defendants at the Comptroller's Office. *See* Exhibit E – Notice of Claim dated June 30, 2023.[3]

48.     At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

49.     This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

50.     Mr. Caesar suffered damage as a result of defendants' actions.  Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, an unlawful search and damage to his reputation.

**December 27, 2023 Arrest For Harassment**

51.     On December 2023, at approximately 6:23PM, defendant Almekaiki along with

---

[2] His car was parked illegally in the vicinity of the bodega.
[3] The notice of claim was amended as there was a defect due to the incident date being June 17, 2023. *See* Exhibit F – Stipulation.

members of the NYPD, who were, upon information and belief, members of the "Street Unit" of the 73rd Precinct, stormed Mr. Caesar's home address in the Brownsville section of Brooklyn. Upon information and belief, the defendants were searching for Mr. Caesar.

52.     Upon information, members of Mr. Caesar's family were injured during the NYPD's pursuit of Mr. Caesar, including, but not limited to Crystele Caesar, Mr. Caesar's sister.[4]

53.     Upon information and belief, Mr. Caesar was arrested in his building without incident.

54.     Upon information, the defendants escalated the situation without any cause to do so, wreaking havoc on the Caesar family.

55.     Mr. Caesar was <u>not even charged with a felony</u>. The criminal complaint lists the charges as criminal possession of a weapon in the fourth degree, menacing in the second degree and harassment in the second degree. *See* Exhibit G – Criminal Complaint dated December 27, 2023. He faced these charges based upon a man named George Admonds who alleged: [MR. CAESAR] DID STATE TO [ADMONDS], IN SUM AND SUBSTANCE, GO TO THE STORE, AND DID DISPLAY WHAT APPEARED TO BE A FIREARM.

56.     Admonds never provided a statement to the police. Admonds never provided a sworn deposition.

57.     Mr. Caesar was not arraigned until December 29, 2023, and was released on bail.

58.     He spent over 2 days between the precinct and central booking incarcerated.

59.     The case was dismissed on speedy trial grounds on April 1, 2024. *See* Exhibit H – Certificate of Disposition.

60.     Within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon defendants at the Comptroller's Office. *See* Exhibit I – Notice of Claim dated

---

[4] Notice of claims are pending regarding this incident with Crystele Caesar, Lloyd's sister, and Simmone Caesar, who is Mr. Caesar's mother.

April 7, 2024.

61.     At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

62.     This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

63.     Mr. Caesar suffered damage as a result of defendants' actions.  Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, an unlawful search and damage to his reputation.

**December 28, 2023 Arrest For Criminal Possession of a Handgun within the 73rd Precinct during his December 27, 2023 Arrest**

64.     During the arrest on December 27, 2023, Defendant was unlawfully interrogated by Defendant Morales inside the 73rd Precinct.

65.     Defendant Morales allegedly identified Plaintiff in a surveillance video and believed Plaintiff was a suspect in a shooting on October 13, 2023. *See* Exhibit J – December 28, 2023 criminal complaint. The problem with Defendant Morales's identification is he had absolutely no familiarity with Plaintiff.

66.     Morales's unlawful interrogation was an attempt to clear an arrest at Plaintiff's expense by getting the plaintiff to identify himself in the surveillance video in question. Plaintiff was shown the video and denied that he was in the video.

67.     However, Morales' swore to a criminal complaint on December 28, 2023, alleging that Plaintiff unlawfully possessed a firearm on October 13, 2023, in front of 1271 Ralph Avenue at roughly 9:29PM, amongst other charges based upon Defendant Morales's identification of Plaintiff in the surveillance video.

68.     Along with the charges from the arrest on December 27, 2023, Mr. Caesar was

arraigned on December 29, 2023. *See* Exhibit K – July 26, 2024 Certificate of Disposition.

69.    Defendant Morales was the <u>sole</u> witness and piece of evidence that led to Mr. Caesar's arrest.

70.    Plaintiff's charges, including several felonies for possession of a firearm and reckless endangerment, were swiftly dismissed on July 26, 2024, as there was no evidence that Mr. Caesar committed a crime. *See* Exhibit K.

71.    Mr. Caesar has not filed a notice of claim based upon this civil rights violation.

72.    Mr. Caesar suffered damage as a result of defendants' actions.  Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, an unlawful search and damage to his reputation.

**<u>March 6, 2024 Arrest for Vehicle Offenses and Possession of Stolen Property</u>**

73.    On March 6, 2024, at approximately 10:08PM, in <u>front of Mr. Caesar's home</u>, which is in the confines of the 73rd Precinct, Defendant Bottcher conducted a car stop of Mr. Caesar as he was <u>parking</u> a car in his driveway. *See* Exhibit L – Criminal complaint dated March 6, 2024.

74.    Defendant Bottcher did not see Mr. Caesar driving the car other than to park the vehicle.

75.    Mr. Caesar was lawfully parking the vehicle and was not committing a crime.

76.    Without probable cause, Defendant Bottcher conducted a car stop after Mr. Caesar parked the vehicle and unlawfully detained, interrogated, and searched Mr. Caesar.

77.    Defendant Bottcher claimed that Mr. Caesar possessed a stolen license.

78.    Defendant Bottcher's alleged basis for this belief was a man named Malcolm Bastien.

79.    Upon information and belief, Malcolm Bastien never made a statement to police and did not provide a supporting deposition to the claims by Defendant Bottcher. *See* Exhibit L.

80.    Mr. Caesar was then arrested for several vehicle offenses and for possessing stolen property. *See* Exhibit L.

81.    During the arrest, Simmone Caesar, Lloyd's mother, was assaulted by officers that were at the scene.

82.    Inexplicably, Mr. Caesar was held for over 2 days on non-bail eligible offenses before he was arraigned and released by a judge on his own recognizance on March 8, 2024. *See* Exhibit M – Certificate of disposition dated June 5, 2024.

83.    On June 5, 2024, the charges were swiftly dismissed. *See* Exhibit M.

84.    A notice of claim was not filed on this civil rights violation.

85.    Mr. Caesar suffered damage as a result of defendants' actions.  Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, an unlawful search and damage to his reputation.

## April 13, 2024 Arrest for Obstruction, Disorderly Conduct and Possession of a Knife

86.    On April 13, 2024, at approximately 6:35PM, located at 44 New Lots Avenue, within the confines of the 73rd Precinct, Defendant Washington, amongst other unknown defendants, conducted an unlawful stop and upon information and belief frisk of Mr. Caesar. *See* Exhibit N – Criminal Complaint dated April 14, 2024.

87.    Mr. Caesar was not committing a crime and was lawfully in the area.

88.    By Defendant Washington's own admission, upon information and belief, the "Street Unit" of the 73rd Precinct was conducting an "investigation" when Defendant Washington and unknown others unlawfully detained, searched, interrogated, and arrested Mr. Caesar. *See* Exhibit N.

89.    Mr. Caesar was then arrested for obstruction of governmental administration, disorderly conduct, and possessing a knife that was longer than 4 inches. *See* Exhibit N. Mr. Caesar,

-12-

once again, was held for over 24 hours on charges that <u>were not</u> bail eligible. He was arraigned and released on his own recognizance on April 14, 2024. *See* Exhibit O – Certificate of Disposition dated July 31, 2024.

90.    His case was swiftly dismissed on July 31, 2024.

91.    A notice of claim has not been filed based upon this civil rights violation.

92.    Mr. Caesar suffered damage as a result of defendants' actions. Plaintiff was terrorized, deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, an unlawful search and damage to his reputation.

**FIRST CLAIM**
**Unlawful Detention, Interrogation,**
**and Search**

93.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

94.    Defendants, acting individually and in concert, violated the Fourth and Fourteenth Amendments because they stopped, interrogated, and then searched plaintiff without probable cause.

95.    Mr. Caesar unlawfully served over 24 hours for his unlawful arrest on October 6, 2022.

96.    Mr. Caesar unlawfully served approximately 2 days of incarceration for his unlawful arrest on June 15, 2023.

97.    Mr. Caesar unlawfully served approximately 2 days of incarceration for his unlawful arrest on December 27, 2023 and December 28, 2023.

98.    Mr. Caesar unlawfully served approximately 2 days of incarceration for his unlawful arrest on March 6, 2024.

99.    Mr. Caesar unlawfully served over 24 hours of incarceration for his unlawful arrest on April 13, 2024.

100.   As a direct and proximate result of this unlawful conduct, plaintiff

sustained the damages herein before alleged.

## SECOND CLAIM
### False Arrest

101.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

102.    Defendants, acting individually and in concert, violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause on each date listed above.

103.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### Malicious Prosecution

104.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

105.    Here, the entirety of the evidence presented to the prosecutor was by the defendants.

106.    The defendants fabricated evidence presented to the prosecutor.

107.    The defendants shared, upon information and belief, fabricated information with each other and targeted Mr. Caesar, weaponizing the criminal justice system against Mr. Caesar during each of the arrests.

108.    The defendants, acting individually and in concert, falsely arrested and prosecuted Mr. Caesar. It was only by the Grace of God that Mr. Caesar was not prosecuted for his June 15, 2023 arrest because the Kings County District Attorney's Office declined to prosecute. He was not so blessed on the other arrests and was processed and incarcerated for over a day on each arrest.

109.    Without any probable cause to arrest Mr. Caesar, the named defendants and the Jane and John Doe Defendants acted in concert and conspired with each other to use any means, including misrepresenting the value of the evidence in their possession, no matter how unlawful or coercive, to bring charges against Mr. Caesar.

110.    These illegal and unconstitutional means included, but were not limited to, presenting unreliable evidence to the prosecutor so that a criminal complaint would be drafted, and criminal proceedings were instituted.

111.    At every juncture, the Defendants herein misrepresented the value of the evidence knowing that there was no evidence providing probable cause to believe that Mr. Caesar had committed a crime.

112.    The foregoing violations of Plaintiff's federal constitutional rights by the Defendants and their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the initiation and continuation of Plaintiff's criminal prosecution, his loss of liberty, and his other injuries and damages.

113.    The forgoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants' employment and authority.

114.    Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

115.    In creating false evidence against plaintiff, and in forwarding false information to prosecutors, the individual defendants violated plaintiff's right to fair court proceedings and caused plaintiff to be subjected to several days of incarceration and unlawful legal proceedings in violation of the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

116.    By reason of the foregoing and as a direct and proximate result of this unlawful conduct, the Defendants are liable to plaintiff, under 42 U.S.C. 1983, for compensatory and for

-15-

punitive damages.

## FOURTH CLAIM
### State Law False Imprisonment and False Arrest

117.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

118.    By their conduct, both collectively and individually, as described herein, the individual defendants are liable to plaintiff, collectively and individually, for falsely imprisoning, unlawfully searching, and falsely arresting plaintiff on each date listed above.

119.    Plaintiff was conscious of his confinement.

120.    Plaintiff did not consent to his confinement.

121.    Plaintiff's confinement was not otherwise privileged.

122.    Defendant City of New York, as an employer of the individual defendant officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

123.    As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiff sustained the damages alleged herein.

## FIFTH CLAIM
### Excessive force and Destruction of Property
### under 42 U.S.C. § 1983 and State Law

124.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

125.    The level of force employed by the defendants was objectively unreasonable during the October 6, 2022 and June 15, 2023 arrests. Additionally, the defendants destroyed Mr. Caesar's car after searching it, on, upon information and belief, Jun 15, 2023.

126.    The defendants violated Mr. Caesar's constitutional rights based upon their unreasonable use of force.

127.    As a result of the foregoing, Mr. Caesar sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment, humiliation, destruction of property, and a deprivation of

his constitutional rights.

## SEVENTH CLAIM
### Municipal Liability

128.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

129.    Defendants arrested and incarcerated Mr. Caesar in the absence of any evidence of criminal wronging, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

130.    The acts complained of were carried out by the defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

131.    The acts complained of were carried out by the aforementioned defendants in their capacities as police officers and official pursuant to the customs, policies, usages, practices, procedures, and rule of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

132.    Said unlawful customs, policies, usages, practices and procedures include, but are not limited to: (1) unlawfully entering private dwellings without a search warrant and without any other legal basis; (2) unlawfully using excessive force against African-Americans when conducting illegal searches and seizures; (3) conducting unlawful investigations using car stops and stop and frisks as a guise to unlawfully detain, interrogate and search citizens, especially in the African-American community; and (4) the re-establishment and operations of the "Street Unit", which was formerly known as the "Anti-crime Unit" to make arrests after this unit was disbanded based upon the number of police shootings, unlawful stop and frisks, and false arrests that had occurred in the African-American community.[5]

---

[5] This harkens back to the misconduct covered in the "Mollen Report," a 1994 report on corruption in the NYPD that updated the findings of the "Knapp Report" of 1972.

133.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff.

134.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by the Plaintiff alleged herein.

135.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff alleged herein.

136.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff was incarcerated unlawfully.

137.    Defendants collectively and individually, while acting under the color of state law, were directly and actively involved in violating Plaintiff's constitutional rights.

138.    Defendants, collectively and individually, while acting under the color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of plaintiff's constitutional rights.

139.    All of the foregoing acts by defendants deprived plaintiff of federally protected rights, including, but not limited to, the right:

- Not to be deprived of liberty without due process of law;

- To be free from seizure and arrest not based upon probable cause;

- To be free from unwarranted and malicious criminal prosecution;

- Not to have cruel and unusual punishment imposed upon him; and

- To receive equal protection under the law.

## EIGHTH CLAIM
### State Law Assault and Battery

140.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

141.    Defendant police officers touched Mr. Caesar during his arrests on October 6, 2022 and June 15, 2023, in a harmful and offensive way.

142.    Defendant police officers did so without privilege or consent.

143.    Defendants' aforementioned actions placed Mr. Caesar in apprehension of imminent harm and offensive bodily contact.

144.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, assault, battery, lost earnings, emotional distress, embarrassment and humiliation and deprivation of his constitutional rights.

145.    As a result of defendants' conduct, plaintiff has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

## NINTH CLAIM
### Negligent Hiring, Training and Retention

146.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

147.    Defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

148.    Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

149.    Upon information and belief, defendant City knew or should have known through the

exercise of reasonable diligence that the individual defendants were potentially dangerous.

150.    Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

151.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TENTH CLAIM
### Intentional Infliction of Emotional Distress

152.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

153.    The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

154.    The aforementioned conduct was committed by defendants while acting within the scope of their employment by defendant the City of New York.

155.    The aforementioned conduct was committed by defendants while acting in furtherance of their employment by defendant the City of New York.

156.    The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to plaintiff.

157.    As a result of the aforementioned conduct, Plaintiff suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

## ELEVENTH CLAIM
### Failure To Intervene

158.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

159.    Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such

conduct, had a duty to intervene and prevent such conduct and failed to intervene.

160.    Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

161.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a)  Compensatory damages against all defendants, jointly and severally;

(b)  Punitive damages against the individual defendants, jointly and severally;

(c)  Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d)  Such other and further relief as this Court deems just and proper.

Dated:        November 21, 2024
              Forest Hills, New York

JUSTIN C BONUS ATTORNEY AT LAW

*Justin Bonus*
Justin C. Bonus, Esq.
118-35 Queens Blvd, Suite 400
Forest Hills, NY 11375
347-920-0160
Justin.bonus@gmail.com

*Attorneys for Plaintiff*